Forrest G. Buffington
BARBER & BORG, LLC
P.O. Box 67350
Albuquerque, NM 87193-7350
505.884.0004
forrest@barberborg.com
*Attorneys for Plaintiffs*

IN THE UNITED STATES COURT
IN AND FOR THE DISTRICT OF NEW MEXICO

MINNIE TAYLOR, Individually and
As Personal Representative of the ESTATE
Of LOUIE TAYLOR, and HAROLD
CUTHAIR,

                Plaintiffs,

v.                               No.: _____

THE UNITED STATES OF AMERICA,

                Defendant.

## COMPLAINT FOR WRONGFUL DEATH AND LOSS OF CONSORTIUM

### OVERVIEW

1.    This is a civil action against the United States of America, arising from the in-custody death of Louie Taylor on or about February 29, 2020 from an overdose of methamphetamine, while in the custody of the Navajo Nation's Department of Corrections at the Shiprock Jail, a facility operated by the Navajo Nation pursuant to a contract between the Navajo Nation and the United States of America pursuant to Public Law 93-638. This suit is brought by Minnie Taylor, mother of the decedent, individually and as personal representative of the wrongful death estate of the decedent, and by Harold Cuthair, father of the decedent, pursuant to Public Law 93-638 and the federal tort claims act (FTCA) 20 USC §1331, and the substantive law of the State of New Mexico.

## JURISDICTION UNDER THE FEDERAL TORT CLAIMS ACT

2.      This complaint is brought against the United States of America pursuant to pursuant to the provisions of the Federal Tort Claims Act 28 USC §1346(b) and 28 USC §2671, and also pursuant to 28 USC §1331. The FTCA vests this Court with exclusive jurisdiction over Plaintiffs' claim against the United State of America for the negligent acts of its "employees", which term includes, in the context of this claim, the employees of the Navajo Nation Division of Public Safety, and would also include holders of the United States Department of the Interior, Bureau of Indian Affairs law enforcement or corrections commission cards.

3.      The persons who detained, arrested, incarcerated and held Louie Taylor on February 29, 2020 were "employees of the government" within the meaning of 28 USC §2671 acting in the course and scope of their employment as agents, servants, and employees of the United States of America at all times from his initial detention to his being discovered dead in his jail cell.

4.      At all times material hereto, the United States of America authorized and funded the Navajo Nation Division of Public Safety to enforce criminal laws, detain, arrest, incarcerate and house suspects pursuant to a contract with the United States authorized under the Indian Self-Determination and Educational Assistance Act, being Public Law 93-638, codified at 25 USC §5301, et seq.

5.      In connection with the acts and omissions complained of herein, any employees of the Navajo Nation Division of Public Safety were acting pursuant to the aforesaid contract between the United States of America and the Navajo Nation, in the course and scope of their employment.

6.      In connection with the acts and omissions complained of herein, all persons holding Bureau of Indian Affairs law enforcement or corrections commissions were agents and employees of the United States, acting in the course and scope of their employment.

7.      In accordance with Public Law 93-638, or Public Law 100-297, or both, the Navajo Nation is deemed to be an agency or instrumentality of the United States for the purpose of FTCA liability.

8.      The United States of America is the proper defendant for tort claims against the Navajo Nation Division of Public Safety and its employees for acts and omissions under the contract or contracts for the provision of the law enforcement and detention services with the United States of America, and for the negligent acts and omissions of its own agents and employees.

9.      Plaintiffs submitted administrative claims to the United States Department of Interior under the FTCA, as evidenced as Exhibits 1 and 2.  The claims sought damages for sums certain for the death of Louie Taylor.  The Department of Interior has failed to act upon said claims within six months and plaintiffs have filed this complaint within six months after the expiration of six months from submission of their claim pursuant to 28 USC §2401(b) and 39 CFR §912.9. Plaintiffs are thus authorized by law to file this action and this Court has been vested with jurisdiction to hear this action.

## PARTIES

10.      Plaintiff Minnie Taylor is the surviving mother of Louie Taylor, and the wrongful death personal representative of the wrongful death estate of Louie Taylor, having been so appointed in the District Court of the State of New Mexico, San Juan County, Cause no. D-1116-CV-2020-01381.

11.      Minnie Taylor is a resident of Shiprock, San Juan County, New Mexico.

12.     Harold Cuthair is the father of Louie Taylor, and a resident of Towaoc, Montezuma County, Colorado.

13.     Louie Taylor was unmarried and childless at the time of his death.

14.     Louie Taylor was a resident of Shiprock, San Juan County, New Mexico.

15.     All parties plaintiff are Native American; Decedent was an enrolled Ute Mountain Ute; Plaintiff Taylor is an enrolled Navajo; Plaintiff Cuthair is an enrolled Ute Mountain Ute.  All acts and omissions complained of herein occurred on the Navajo Indian Reservation in Shiprock, San Juan County, New Mexico.

16.     The Navajo Nation Division of Public Safety is a governmental division of the Navajo Nation, a federally-recognized Indian Tribe, which through its Department of Law Enforcement enforces the law, and through its Department of Corrections detains and incarcerates prisoners, pursuant to a contract, or contracts, with the United States of America authorized under the Indian Self-Determination and Educational Assistance Act, being Public Law 93-638, codified at 25 USC §5301, et seq.

17.     The Bureau of Indian Affairs is a bureau of the Department of Interior of the United States of America, providing law enforcement and detention services in Indian Country, through its own personnel or through contracts pursuant to Public Law 93-638.

18.     The negligent acts of the agents and employees of the Navajo Nation Division of Public Safety in arresting and detaining Louie Taylor, occurred while acting under a contract or contracts entered into pursuant to Public Law 93-638 or while acting as agents of the United States Department of Interior, Bureau of Indian Affairs.

**VENUE**

19.     All acts and omissions complained of herein occurred in the State of New Mexico. Venue in the United States District Court in the District of New Mexico is therefore proper under 28 USC §1402(b).

## FACTS OF THE OCCURRENCE

20.     On or about February 29, 2020, Louie Taylor ingested methamphetamine.

21.     On February 29, 2020, Louie Taylor become agitated and appeared to be hallucinating, went outside, and did not return.

22.     Minnie attempted to locate Louie Taylor outside of her home, but was unsuccessful.

23.     Minnie Taylor received a notification from the Shiprock Police Department that Louie Taylor had been arrested due to displaying erratic and apparently intoxicated behavior, at the Northern Navajo Medical Center, where he had apparently sought medical care for his drug ingestion.

24.     Minnie Taylor communicated to the arresting officer, and the Shiprock jail, the fact that Louie Taylor had apparently ingested illegal drugs.

25.     Shortly thereafter, Minnie received a call from a person, who identified himself as a Navajo Nation police officer, indicating Louie was at Northern Navajo Medical Center and was being arrested, but did not cite the reason for the arrest.  During this call, Minnie stated she'd located a small bag with different color and sized "drugs" and requested Louie have a medical examination due to his probable drug ingestion intoxication.

26.     Minnie Taylor spoke with a dispatcher from the Shiprock Police Department and again requested that Louie immediately be taken for medical care before being taken to jail.

27.     A Navajo Nation police officer arrived at Minnie Taylor's home to explain that Louie Taylor would be detained at the Shiprock Police Detention Facility.  At this time, Minnie again pled with police to have her son examined and treated for a possible overdose.

28.     It was during the home visit that Minnie provided the officer with the bag of unknown substances she found in Louie's room and requested the bag be provided to Louie Taylor's medical provider at Northern Navajo Medical Center.

29.     Emergency medical care was available at the hospital where Louie Taylor was arrested and within two minutes from the Shiprock jail at Northern Navajo Medical Center and approximately ¼ mile from his residence.

30.     Minnie received another visit to her home on March 1, 2020 at approximately 2 or 3 am to inform her that Louie Taylor had passed away in-custody at the Shiprock Police Detention Facility.

31.     From the repeated communications from Minnie Taylor, and her actual delivery of the suspect drugs, to personnel of the Navajo Nation Division of Public Safety and law enforcement and corrections personnel, and the erratic behavior of Louie Taylor, the department of corrections knew Louis Taylor needed immediate medical care.

32.     Notwithstanding their actual knowledge of the potentially lethal consumption of drugs by Louie Taylor, the Navajo Nation Division of Public Safety, acting through its law enforcement and corrections personnel, negligently failed to allow him access to medical care, negligently interfered with his attempts to secure medical care, negligently failed to screen him prior to his admission to jail, negligently failed to monitor him upon admission to the jail, and negligent failed to transport him for medical assessment and treatment.

33.     As a direct and proximate consequence of the negligent acts and omissions of the Navajo Nation Division of Public Safety, acting through its law enforcement and corrections agents and employees, Louie Taylor died in his cell of a methamphetamine overdose.

34.     The United States of America, in the case of its personnel having a Bureau of Indian Affairs law enforcement commission or corrections commission, and in the case of the provision of law enforcement and correctional services under Public Law 93-638, had a duty to provide adequate medical care to the decedent Louie Taylor, and, in addition, to not inflict cruel and unusual punishment upon him, by the knowing deprivation of necessary medical care, under the Eighth Amendment of the Constitution of the United States.

35.     The Navajo Nation, acting through its Division of Public Safety and its departments of law enforcement and corrections, under its own common law, and under the provisions of the Indian Civil Rights Act, and the Navajo Nation Bill of Rights, and the Constitution of the United States of America and, under the provisions of the Consent Decree entered in the Navajo Nation District Court Cause No, WR-CV-235-92, *Silver v. Pahe*, and, nationally-prevailing, constitutional, and federal standards for the provision of detention services, incorporated into its "638" contract with the United States of America, had a duty to medically screen, assess and provide necessary medical care for persons arrested and detained in its jails.

36.     Included in the duties of the Navajo Nation under its contract with the United States of America for the provision of law enforcement and detention services were the duties to screen incoming inmates for medical needs, and refuse acceptance of such prisoners as were in need of medical care, and to routinely monitor and check up on inmates who were at risk due to medical conditions, including the ingestion of intoxicating substances.

37.     The Navajo Nation Division of Public Safety, through its Department of Law Enforcement and its Department of Corrections knew through both the observation of the arresting officer, and the communications of Minnie Taylor to both law enforcement and corrections personnel, and the actual delivery of suspected drugs to Division of Public Safety personnel that Louie Taylor had ingested drugs and was in need of medical assessment and treatment.

38.     By arresting him, the employees of the Navajo Nation Division of Public Safety actively prevented Louie Taylor from obtaining medical treatment for his drug ingestion on his own, and thereby had actual notice that the decedent himself believed he required medical assistance.

39.     Notwithstanding their actual knowledge of Louis Taylor's ingestion of unknown drugs, the employees of the Navajo Nation Division of Public safety failed and refused to acknowledge the medical condition and known threat to the health and life of Louie Taylor, and failed, and refused to provide him medical treatment after his arrest.

## COUNT I
## <u>NEGLIGENCE</u>

40.     Paragraphs one through thirty-nine are incorporated by reference.

41.     The law enforcement officers and jail personnel who arrested and detained Louie Taylor knew that Louie Taylor was at risk of death from ingestion of drugs.

42.     The law enforcement and jail personnel who arrested and detained Louie Taylor knew they had a duty to have Louie Taylor medically assessed or screened.

43.     Instead, Louie Taylor was booked into jail without medical screening, was deprived of access to medical care, and was not monitored or observed, and died.

44.     Notwithstanding the known risks to Louie Taylor, the law enforcement and jail personnel who arrested and detained him negligently failed to observe him and failed to secure medical assessment or treatment for him when they knew he required medical attention or assessment.

45.     The death of Louie Taylor from drug ingestion was foreseeable.

46.     As a direct and proximate result of the actions and inactions of the law enforcement personnel who arrested and corrections personnel detained Louie Taylor, he died of methamphetamine poisoning.

**COUNT II**
**NEGLIGENT TRAINING, ADMINISTRATION**
**AND SUPERVISION**

47.     Paragraphs one through forty-six are incorporated by reference herein.

48.     The Navajo Nation Division of Public Safety and the Navajo Nation Department of Corrections had a duty to train their respective officers and employees in the dangers presented by drug use, and to adopt and enforce policies designed to prevent death due to drug use.

49.     The Navajo Nation Division of Public Safety and the Navajo Nation Department of Corrections knew or should have known of the dangers presented by drug use and overdose.

50.     Substance abuse and overdose is a reoccurring and common occurrence for law enforcement and jail agencies in the area of Shiprock, New Mexico.

51.     Notwithstanding their knowledge of the dangers to arrested persons of drug ingestion, the Navajo Nation Division of Public Safety and the Navajo Nation Department of Corrections negligently failed to train and supervise the personnel who arrested Louie Taylor in the dangers of acute drug use, and prevention of death arising therefrom, and failed to make, adopt, follow and enforce standards to avoid death from drug ingestion.

52.     As a consequence of the above-alleged failure to train and supervise in the dangers of drug use and to make, adopt and enforce standards to prevent the same, Louie Taylor died.

## COUNT III
## <u>LOSS OF CHANCE</u>

53.     Paragraphs one through fifty-two are incorporated by reference herein.

54.     By depriving Louie Taylor of medical assessment, screening, observation, and monitoring and denying medical treatment, the Navajo nation Division of Public Safety, deprived Louie Taylor of the chance to preserve his life by obtaining appropriate and available medical treatment.

## COUNT IV
## <u>LOSS OF CONSORTIUM</u>

55.     Paragraphs one through fifty-four are incorporated herein by reference.

56.     Plaintiffs experienced, due to the death of Louie Taylor, a loss of consortium, including loss of society, guidance, companionship, love, income and services resulting from the death of Louie Taylor and the destruction of their familial relationship with him.

## <u>DAMAGES</u>

57.     Paragraphs one through fifty-six are incorporated by reference.

58.     As a direct and proximate result of the death of Louie Taylor, Plaintiffs have suffered and will continue in the future to suffer losses and damages, including but not limited to; the loss of Louie Taylor's love, affection, support, companionship, care, protection, and guidance; pain, grief, sorrow, anguish, stress, shock and mental suffering; loss of income and services; and the expense of funeral and burial, and in addition, the wrongful death estate has suffered loss of value of life itself, and further damages as allowed in the New Mexico wrongful death act as codified at 41-2-1 et. seq., NMSA 1978.

WHEREFORE, Plaintiffs pray for judgment against the United States for such damages as are available to her under the wrongful death law of the of New Mexico, costs of suit, and such other and further relief as to which the law and proof shall deem them entitled.

*Respectfully Submitted By:*

**BARBER & BORG, LLC**

By: */s/ Forrest G. Buffington*
      Forrest G. Buffington
      P.O. Box 67350
      Albuquerque, NM 87193-7350
      505-884-0004
      505-884-0077 (Fax)
      forrest@barberborg.com
      *Attorney for Plaintiff*

| CLAIM FOR DAMAGE, INJURY, OR DEATH | INSTRUCTIONS: Please read carefully the Instructions on the reverse side and supply information requested on both sides of this form. Use additional sheet(s) if necessary. See reverse side for additional instructions. | FORM APPROVED OMB NO. 1105-0008 |
|---|---|---|

| 1. Submit to Appropriate Federal Agency: | 2. Name, address of claimant, and claimant's personal representative if any. (See instructions on reverse). Number, Street, City, State and Zip code. |
|---|---|
| Department of the Interior<br>1849 C Street NW<br>Washington, D.C.  20240 | Harold Cuthair, Individually<br>c/o Barber & Borg, LLC<br>PO Box 67350<br>Albuquerque, NM 87193-7350 |

| 3. TYPE OF EMPLOYMENT<br>☐ MILITARY  ☒ CIVILIAN | 4. DATE OF BIRTH<br>03/02/61 | 5. MARITAL STATUS<br>Single | 6. DATE AND DAY OF ACCIDENT<br>02/29/2020 | 7. TIME (A.M. OR P.M.)<br>8:00pm |
|---|---|---|---|---|

8. BASIS OF CLAIM (State in detail the known facts and circumstances attending the damage, injury, or death, identifying persons and property involved, the place of occurrence and the cause thereof. Use additional pages if necessary).

SEE ATTACHMENT # 8 BASIS OF CLAIM.

| 9. | PROPERTY DAMAGE |
|---|---|

NAME AND ADDRESS OF OWNER, IF OTHER THAN CLAIMANT (Number, Street, City, State, and Zip Code).

Not applicable.

BRIEFLY DESCRIBE THE PROPERTY, NATURE AND EXTENT OF THE DAMAGE AND THE LOCATION OF WHERE THE PROPERTY MAY BE INSPECTED. (See instructions on reverse side).

Not applicable.

| 10. | PERSONAL INJURY/WRONGFUL DEATH |
|---|---|

STATE THE NATURE AND EXTENT OF EACH INJURY OR CAUSE OF DEATH, WHICH FORMS THE BASIS OF THE CLAIM.  IF OTHER THAN CLAIMANT, STATE THE NAME OF THE INJURED PERSON OR DECEDENT.

See #8:  Basis of Claim.

| 11. | WITNESSES |
|---|---|

| NAME | ADDRESS (Number, Street, City, State, and Zip Code) |
|---|---|
| Minnie Taylor | |

| 12. (See instructions on reverse). | | AMOUNT OF CLAIM (in dollars) | |
|---|---|---|---|

| 12a. PROPERTY DAMAGE | 12b. PERSONAL INJURY | 12c. WRONGFUL DEATH | 12d. TOTAL (Failure to specify may cause forfeiture of your rights). |
|---|---|---|---|
| 0.00 | $2,500,000.00 | 0.00 | $2,500,000.00 |

I CERTIFY THAT THE AMOUNT OF CLAIM COVERS ONLY DAMAGES AND INJURIES CAUSED BY THE INCIDENT ABOVE AND AGREE TO ACCEPT SAID AMOUNT IN FULL SATISFACTION AND FINAL SETTLEMENT OF THIS CLAIM.

| 13a. SIGNATURE OF CLAIMANT (See instructions on reverse side). | 13b. PHONE NUMBER OF PERSON SIGNING FORM<br>505-368-4200 | 14. DATE OF SIGNATURE<br>12·11·2020 |
|---|---|---|

| CIVIL PENALTY FOR PRESENTING FRAUDULENT CLAIM | CRIMINAL PENALTY FOR PRESENTING FRAUDULENT CLAIM OR MAKING FALSE STATEMENTS |
|---|---|
| The claimant is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, plus 3 times the amount of damages sustained by the Government. (See 31 U.S.C. 3729). | Fine, imprisonment, or both. (See 18 U.S.C. 287, 1001.) |

| Authorized for Local Reproduction<br>Previous Edition is not Usable<br>95-109 | NSN 7540-00-634-4046 | STANDARD FORM 95 (REV. 2/2007)<br>PRESCRIBED BY DEPT. OF JUSTICE<br>28 CFR 14.2 |
|---|---|---|

EXHIBIT 1

**INSURANCE COVERAGE**

In order that subrogation claims may be adjudicated, it is essential that the claimant provide the following information regarding the insurance coverage of the vehicle or property.

15. Do you carry accident insurance? ☐ Yes   If yes, give name and address of insurance company (Number, Street, City, State, and Zip Code) and policy number. ☒ No

16. Have you filed a claim with your insurance carrier in this instance, and if so, is it full coverage or deductible? ☐ Yes ☒ No   17. If deductible, state amount.

18. If a claim has been filed with your carrier, what action has your insurer taken or proposed to take with reference to your claim? (It is necessary that you ascertain these facts).
Not applicable.

19. Do you carry public liability and property damage insurance? ☐ Yes   If yes, give name and address of insurance carrier (Number, Street, City, State, and Zip Code). ☒ No

Not applicable.

**INSTRUCTIONS**

Claims presented under the Federal Tort Claims Act should be submitted directly to the "appropriate Federal agency" whose employee(s) was involved in the incident. If the incident involves more than one claimant, each claimant should submit a separate claim form.

Complete all items - Insert the word NONE where applicable.

A CLAIM SHALL BE DEEMED TO HAVE BEEN PRESENTED WHEN A FEDERAL AGENCY RECEIVES FROM A CLAIMANT, HIS DULY AUTHORIZED AGENT, OR LEGAL REPRESENTATIVE, AN EXECUTED STANDARD FORM 95 OR OTHER WRITTEN NOTIFICATION OF AN INCIDENT, ACCOMPANIED BY A CLAIM FOR MONEY DAMAGES IN A SUM CERTAIN FOR INJURY TO OR LOSS OF PROPERTY, PERSONAL INJURY, OR DEATH ALLEGED TO HAVE OCCURRED BY REASON OF THE INCIDENT. THE CLAIM MUST BE PRESENTED TO THE APPROPRIATE FEDERAL AGENCY WITHIN TWO YEARS AFTER THE CLAIM ACCRUES.

Failure to completely execute this form or to supply the requested material within two years from the date the claim accrued may render your claim invalid. A claim is deemed presented when it is received by the appropriate agency, not when it is mailed.

If instruction is needed in completing this form, the agency listed in item #1 on the reverse side may be contacted. Complete regulations pertaining to claims asserted under the Federal Tort Claims Act can be found in Title 28, Code of Federal Regulations, Part 14. Many agencies have published supplementing regulations. If more than one agency is involved, please state each agency.

The claim may be filed by a duly authorized agent or other legal representative, provided evidence satisfactory to the Government is submitted with the claim establishing express authority to act for the claimant. A claim presented by an agent or legal representative must be presented in the name of the claimant. If the claim is signed by the agent or legal representative, it must show the title or legal capacity of the person signing and be accompanied by evidence of his/her authority to present a claim on behalf of the claimant as agent, executor, administrator, parent, guardian or other representative.

If claimant intends to file for both personal injury and property damage, the amount for each must be shown in item number 12 of this form.

The amount claimed should be substantiated by competent evidence as follows:

(a) In support of the claim for personal injury or death, the claimant should submit a written report by the attending physician, showing the nature and extent of the injury, the nature and extent of treatment, the degree of permanent disability, if any, the prognosis, and the period of hospitalization, or incapacitation, attaching itemized bills for medical, hospital, or burial expenses actually incurred.

(b) In support of claims for damage to property, which has been or can be economically repaired, the claimant should submit at least two itemized signed statements or estimates by reliable, disinterested concerns, or, if payment has been made, the itemized signed receipts evidencing payment.

(c) In support of claims for damage to property which is not economically repairable, or if the property is lost or destroyed, the claimant should submit statements as to the original cost of the property, the date of purchase, and the value of the property, both before and after the accident. Such statements should be by disinterested competent persons, preferably reputable dealers or officials familiar with the type of property damaged, or by two or more competitive bidders, and should be certified as being just and correct.

(d) Failure to specify a sum certain will render your claim invalid and may result in forfeiture of your rights.

**PRIVACY ACT NOTICE**

This Notice is provided in accordance with the Privacy Act, 5 U.S.C. 552a(e)(3), and concerns the information requested in the letter to which this Notice is attached.
   A. *Authority:* The requested information is solicited pursuant to one or more of the following: 5 U.S.C. 301, 28 U.S.C. 501 et seq., 28 U.S.C. 2671 et seq., 28 C.F.R. Part 14.

B. *Principal Purpose:* The information requested is to be used in evaluating claims.
C. *Routine Use:* See the Notices of Systems of Records for the agency to whom you are submitting this form for this information.
D. *Effect of Failure to Respond:* Disclosure is voluntary. However, failure to supply the requested information or to execute the form may render your claim "invalid."

**PAPERWORK REDUCTION ACT NOTICE**

This notice is solely for the purpose of the Paperwork Reduction Act, 44 U.S.C. 3501. Public reporting burden for this collection of information is estimated to average 6 hours per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the Director, Torts Branch, Attention: Paperwork Reduction Staff, Civil Division, U.S. Department of Justice, Washington, DC 20530 or to the Office of Management and Budget. Do not mail completed form(s) to these addresses.

STANDARD FORM 95 REV. (2/2007) BACK

#8 Basis of Claim

Claimant is the surviving father of Louie Taylor, the decedent herein. Decedent was childless at the time of his death. This claim is brought against the United States, pursuant to a so-called "638" contract between the United States and the Navajo Nation for the provision of jail and law enforcement services on the Navajo Nation pursuant to the Indian Self-Determination Act. It is believed that all actions of the Navajo Nation complained of were pursuant to the Indian Self-Determination Act and the contract above noted.

On February 29, 2020, Minnie Taylor noticed her son was uneasy, restless and moving about her home; he appeared to be hallucinating and was agitated. Louie would go outside of his mother Minnie's home and return. She believed Louie was under the influence of some intoxicating substance on this date.

During one of Louie's trips outside of her home, he'd been gone for some time but did not return inside of Minnie's home. Minnie attempted to look for Louie outside of her Shiprock home, but was unsuccessful. Shortly after attempting to locate Louie, Minnie received a call from a male whom identified himself as a Navajo Police officer. The officer reported that Louie was at Northern Navajo Medical Center, an approximate ¼ mile walk from Ms. Taylor's home, and was being arrested. Minnie pleaded that her son, Louie, be examined as she'd found some unknown drugs in his room. She stated he may have overdosed on a substance, to the officer on the phone, and requested he be examined.

Minnie called Shiprock Police dispatch and again requested that her son have an immediate medical examination and further requested he not be jailed. Minnie was later notified that a female officer arrested Louie and was transporting him to the Shiprock Detention Center. Shortly thereafter, a male officer arrived at Minnie's home to inform her that Louie was being detained. Minnie renewed her plea to have Louie medically examined and treated for a possible overdose. Minnie reports having given the officer a bag of drugs she'd found in his room, previously mentioned, for delivery to a treating physician. It appears that the bag of drugs wasn't given to the medical staff at Northern Navajo Medical Center, as Louie was not allowed to see a physician. It appears that the Navajo Nation Police actively interfered with the decedent's seeking medical assistance, and the Navajo Nation Jail staff denied him critically needed medical care.

Based on information and belief, Louie walked to Northern Navajo Medical Center for medical care. Instead he was denied care, arrested and taken to the detention center without receiving, at minimum, an exam to ensure he was not experiencing an overdose or a mental health crisis. Instead, Louie Taylor was arrested by an officer, or officers, of the Navajo Nation Police Department for unknown reasons, jailed, and denied medical assessment or treatment. At the time of his arrest, he was in an intoxicated state. On the morning of March 1, 2020, he was discovered in the jail, unresponsive. Subsequent autopsy submitted herewith confirms death by methamphetamine overdose.

Information between the time of decedent's arrest and his death has been actively suppressed by the Navajo Nation Police Department (NNPD). Claimant or her representatives

have requested reports concerning decedent's death from NNPD by mail on June 24, 2020, by email and by calling the Criminal Investigator, to no avail. To date, no reports have been received, however, NNPD Criminal Investigator, Dale West confirmed that this was a death being investigated by NNPD that his report existed, but the case was still open.

Thus, Claimant's bases for recovery are necessarily limited; however, based upon information derived from the autopsy report and the circumstances known to claimant, claimant's decedent died as a result of the negligent failure of the NNPD to recognize the decedent's intoxication as a medical emergency and secure prompt medical intervention. Likewise, claimant believes that NNPD lacked or failed to follow policies which would have identified acute drug intoxication as a medical emergency requiring prompt medical attention, or at a minimum, monitoring.

As a result of the wrongful death of Louie Taylor, claimant has lost the value of his love, assistance, companionship, support, affection and all consortium claims recognizable by the law of the State of New Mexico.

This form (Form 95) is formal notice of a claim, as required by federal law. It is not a pleading and is intended to be interpreted liberally in view of the fact that claimant has limited information about the claim and that much of the necessary information is in the hands of the NNPD. There may be other, unspecified, negligent acts or omissions, which have not been precisely identified at this time, but which are part of the sequence of events from which the claim arises. Some acts or omissions may pre-date the date stated on this form and some may have come afterward, but they are interrelated. All negligent acts and omissions related to the stated claim are hereby included in the tort notice, including, if appropriate, failure to transfer in a safe, reasonable, and timely manner, failure to communicate, failure to assess, failure to monitor, negligent hiring, training, supervision, and retention. Litigation and discovery may add clarity and precision to the claim. It is felt that the notice provided and the information given is sufficient under law to allow the government to conduct its own investigation of the circumstances of the claim.



U.S. Postal Service™
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information, visit our website at *www.usps.com®*.

Washington, DC 20240

Certified Mail Fee   $3.55
$                                      $2.85
Extra Services & Fees *(check box, add fee as appropriate)*
☐ Return Receipt (hardcopy)              $    $0.00
☐ Return Receipt (electronic)            $    $0.00
☐ Certified Mail Restricted Delivery     $    $0.00
☐ Adult Signature Required               $    $0.00
☐ Adult Signature Restricted Delivery    $
Postage                                  $0.55
$
Total Postage and Fees
$                                        $6.95

Postmark
DEC 12 2020
12/12/2020

CUTHAIR

Dept of the Interior
1849 C Street NW
Washington, DC 20240

PS Form 3800, April 2015 PSN 7530-02-000-9047          See Reverse for Instructions

7019 0140 0000 6865 1873

| CLAIM FOR DAMAGE, INJURY, OR DEATH | INSTRUCTIONS: Please read carefully the instructions on the reverse side and supply information requested on both sides of this form. Use additional sheet(s) if necessary. See reverse side for additional instructions. | FORM APPROVED OMB NO. 1105-0008 |
|---|---|---|

| 1. Submit to Appropriate Federal Agency:<br><br>Department of the Interior<br>1849 C Street NW<br>Washington, D.C.  20240 | 2. Name, address of claimant, and claimant's personal representative if any. (See instructions on reverse). Number, Street, City, State and Zip code.<br><br>Minnie Taylor, Individually and for Estate of Louie Taylor<br>c/o Barber & Borg, LLC<br>PO Box 67350<br>Albuquerque, NM 87193-7350 |
|---|---|

| 3. TYPE OF EMPLOYMENT<br>☐ MILITARY  ☒ CIVILIAN | 4. DATE OF BIRTH<br>11/07/1950 | 5. MARITAL STATUS<br>Single | 6. DATE AND DAY OF ACCIDENT<br>02/29/2020 | 7. TIME (A.M. OR P.M.)<br>8:00pm |
|---|---|---|---|---|

**8. BASIS OF CLAIM** (State in detail the known facts and circumstances attending the damage, injury, or death, identifying persons and property involved, the place of occurrence and the cause thereof. Use additional pages if necessary.)

SEE ATTACHMENT # 8 BASIS OF CLAIM.

| 9. | PROPERTY DAMAGE |
|---|---|

NAME AND ADDRESS OF OWNER, IF OTHER THAN CLAIMANT (Number, Street, City, State, and Zip Code).

Not applicable.

BRIEFLY DESCRIBE THE PROPERTY, NATURE AND EXTENT OF THE DAMAGE AND THE LOCATION OF WHERE THE PROPERTY MAY BE INSPECTED. (See instructions on reverse side).

Not applicable.

| 10. | PERSONAL INJURY/WRONGFUL DEATH |
|---|---|

STATE THE NATURE AND EXTENT OF EACH INJURY OR CAUSE OF DEATH, WHICH FORMS THE BASIS OF THE CLAIM. IF OTHER THAN CLAIMANT, STATE THE NAME OF THE INJURED PERSON OR DECEDENT.

See #8:  Basis of Claim.

| 11. | WITNESSES | |
|---|---|---|
| NAME | ADDRESS (Number, Street, City, State, and Zip Code) | |
| Minnie Taylor | c/o Barber & Borg, LLC | |

| 12. (See instructions on reverse). | AMOUNT OF CLAIM  (in dollars) | | |
|---|---|---|---|
| 12a. PROPERTY DAMAGE | 12b. PERSONAL INJURY | 12c. WRONGFUL DEATH | 12d. TOTAL (Failure to specify may cause forfeiture of your rights). |
| 0.00 | $2,500,000.00 | $2,500,000.00 | $5,000,000.00 |

I CERTIFY THAT THE AMOUNT OF CLAIM COVERS ONLY DAMAGES AND INJURIES CAUSED BY THE INCIDENT ABOVE AND AGREE TO ACCEPT SAID AMOUNT IN FULL SATISFACTION AND FINAL SETTLEMENT OF THIS CLAIM.

| 13a. SIGNATURE OF CLAIMANT (See instructions on reverse side).<br>*Minnie Taylor* | 13b. PHONE NUMBER OF PERSON SIGNING FORM<br>505-368-4200 | 14. DATE OF SIGNATURE<br>12·11·2020 |
|---|---|---|

| CIVIL PENALTY FOR PRESENTING FRAUDULENT CLAIM | CRIMINAL PENALTY FOR PRESENTING FRAUDULENT CLAIM OR MAKING FALSE STATEMENTS |
|---|---|
| The claimant is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, plus 3 times the amount of damages sustained by the Government. (See 31 U.S.C. 3729). | Fine, imprisonment, or both. (See 18 U.S.C. 287, 1001.) |

Authorized for Local Reproduction
Previous Edition is not Usable

95-109

NSN 7540-00-634-4046

STANDARD FORM 95 (REV. 2/2007)
PRESCRIBED BY DEPT. OF JUSTICE
28 CFR 14.2

EXHIBIT 2

## INSURANCE COVERAGE

In order that subrogation claims may be adjudicated, it is essential that the claimant provide the following information regarding the insurance coverage of the vehicle or property.

15. Do you carry accident insurance?  ☐ Yes   If yes, give name and address of insurance company (Number, Street, City, State, and Zip Code) and policy number.  ☒ No

16. Have you filed a claim with your insurance carrier in this instance, and if so, is it full coverage or deductible?  ☐ Yes  ☒ No   | 17. If deductible, state amount.

18. If a claim has been filed with your carrier, what action has your insurer taken or proposed to take with reference to your claim? (It is necessary that you ascertain these facts).
Not applicable.

19. Do you carry public liability and property damage insurance?  ☐ Yes   If yes, give name and address of insurance carrier (Number, Street, City, State, and Zip Code).  ☒ No

Not applicable.

## INSTRUCTIONS

**Claims presented under the Federal Tort Claims Act should be submitted directly to the "appropriate Federal agency" whose employee(s) was involved in the incident.  If the incident involves more than one claimant, each claimant should submit a separate claim form.**

**Complete all items - Insert the word NONE where applicable.**

A CLAIM SHALL BE DEEMED TO HAVE BEEN PRESENTED WHEN A FEDERAL AGENCY RECEIVES FROM A CLAIMANT, HIS DULY AUTHORIZED AGENT, OR LEGAL REPRESENTATIVE, AN EXECUTED STANDARD FORM 95 OR OTHER WRITTEN NOTIFICATION OF AN INCIDENT, ACCOMPANIED BY A CLAIM FOR MONEY

Failure to completely execute this form or to supply the requested material within two years from the date the claim accrued may render your claim invalid. A claim is deemed presented when it is received by the appropriate agency, not when it is mailed.

If instruction is needed in completing this form, the agency listed in item #1 on the reverse side may be contacted. Complete regulations pertaining to claims asserted under the Federal Tort Claims Act can be found in Title 28, Code of Federal Regulations, Part 14. any agencies have published supplementing regulations. If more than one agency is involved, please state each agency.

The claim may be filled by a duly authorized agent or other legal representative, provided evidence satisfactory to the Government is submitted with the claim establishing express authority to act for the claimant. A claim presented by an agent or legal representative must be presented in the name of the claimant. If the claim is signed by the agent or legal representative, it must show the title or legal capacity of the person signing and be accompanied by evidence of his/her authority to present a claim on behalf of the claimant as agent, executor, administrator, parent, guardian or other representative.

If claimant intends to file for both personal injury and property damage, the amount for each must be shown in item number 12 of this form.

DAMAGES IN A SUM CERTAIN FOR INJURY TO OR LOSS OF PROPERTY, PERSONAL INJURY, OR DEATH ALLEGED TO HAVE OCCURRED BY REASON OF THE INCIDENT. THE CLAIM MUST BE PRESENTED TO THE APPROPRIATE FEDERAL AGENCY WITHIN TWO YEARS AFTER THE CLAIM ACCRUES.

The amount claimed should be substantiated by competent evidence as follows:

(a)  In support of the claim for personal injury or death, the claimant should submit a written report by the attending physician, showing the nature and extent of the injury, the nature and extent of treatment, the degree of permanent disability, if any, the prognosis, and the period of hospitalization, or incapacitation, attaching itemized bills for medical, hospital, or burial expenses actually incurred.

(b)  In support of claims for damage to property, which has been or can be economically repaired, the claimant should submit at least two itemized signed statements or estimates by reliable, disinterested concerns, or, if payment has been made, the itemized signed receipts evidencing payment.

(c)  In support of claims for damage to property which is not economically repairable, or if the property is lost or destroyed, the claimant should submit statements as to the original cost of the property, the date of purchase, and the value of the property, both before and after the accident.  Such statements should be by disinterested competent persons, preferably reputable dealers or officials familiar with the type of property damaged, or by two or more competitive bidders, and should be certified as being just and correct.

(d)  Failure to specify a sum certain will render your claim invalid and may result in forfeiture of your rights.

## PRIVACY ACT NOTICE

This Notice is provided in accordance with the Privacy Act, 5 U.S.C. 552a(e)(3), and concerns the information requested in the letter to which this Notice is attached.
   A.  *Authority:* The requested information is solicited pursuant to one or more of the following: 5 U.S.C. 301, 28 U.S.C. 501 et seq., 28 U.S.C. 2671 et seq., 28 C.F.R. Part 14.

B.  *Principal Purpose:* The information requested is to be used in evaluating claims.
C.  *Routine Use:*  See the Notices of Systems of Records for the agency to whom you are submitting this form for this information.
D.  *Effect of Failure to Respond:*  Disclosure is voluntary.  However, failure to supply the requested information or to execute your claim may render your claim "invalid."

## PAPERWORK REDUCTION ACT NOTICE

This notice is solely for the purpose of the Paperwork Reduction Act, 44 U.S.C. 3501.  Public reporting burden for this collection of information is estimated to average 6 hours per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information.  Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the Director, Torts Branch, Attention:  Paperwork Reduction Staff, Civil Division, U.S. Department of Justice, Washington, DC  20530 or to the Office of Management and Budget.  Do not mail completed form(s) to these addresses.

**STANDARD FORM 95 REV. (2/2007) BACK**

#8 Basis of Claim

Claimant is the surviving mother and personal representative of Louie Taylor, the decedent herein. A copy of her appointment of wrongful death personal representative is submitted herewith. Decedent was childless at the time of his death. This claim is brought against the United States, pursuant to a so-called "638" contract between the United States and the Navajo Nation for the provision of jail and law enforcement services on the Navajo Nation pursuant to the Indian Self-Determination Act. It is believed that all actions of the Navajo Nation complained of were pursuant to the Indian Self-Determination Act and the contract above noted.

On February 29, 2020, Minnie Taylor noticed her son was uneasy, restless and moving about her home; he appeared to be hallucinating and was agitated. Louie would go outside of his mother Minnie's home and return. She believed Louie was under the influence of some intoxicating substance on this date.

During one of Louie's trips outside of her home, he'd been gone for some time but did not return inside of Minnie's home. Minnie attempted to look for Louie outside of her Shiprock home, but was unsuccessful. Shortly after attempting to locate Louie, Minnie received a call from a male whom identified himself as a Navajo Police officer. The officer reported that Louie was at Northern Navajo Medical Center, an approximate ¼ mile walk from Ms. Taylor's home, and was being arrested. Minnie pleaded that her son, Louie, be examined as she'd found some unknown drugs in his room. She stated he may have overdosed on a substance, to the officer on the phone, and requested he be examined.

Minnie called Shiprock Police dispatch and again requested that her son have an immediate medical examination and further requested he not be jailed. Minnie was later notified that a female officer arrested Louie and was transporting him to the Shiprock Detention Center. Shortly thereafter, a male officer arrived at Minnie's home to inform her that Louie was being detained. Minnie renewed her plea to have Louie medically examined and treated for a possible overdose. Minnie reports having given the officer a bag of drugs she'd found in his room, previously mentioned, for delivery to a treating physician. It appears that the bag of drugs wasn't given to the medical staff at Northern Navajo Medical Center, as Louie was not allowed to see a physician. It appears that the Navajo Nation Police actively interfered with the decedent's seeking medical assistance, and the Navajo Nation Jail staff denied him critically needed medical care.

Based on information and belief, Louie walked to Northern Navajo Medical Center for medical care. Instead he was denied care, arrested and taken to the detention center without receiving, at minimum, an exam to ensure he was not experiencing an overdose or a mental health crisis. Instead, Louie Taylor was arrested by an officer, or officers, of the Navajo Nation Police Department for unknown reasons, jailed, and denied medical assessment or treatment. At the time of his arrest, he was in an intoxicated state. On the morning of March 1, 2020, he was discovered in the jail, unresponsive. Subsequent autopsy submitted herewith confirms death by methamphetamine overdose.

Information between the time of decedent's arrest and his death has been actively suppressed by the Navajo Nation Police Department (NNPD). Claimant or her representatives have requested reports concerning decedent's death from NNPD by mail on June 24, 2020, by email and by calling the Criminal Investigator, to no avail. To date, no reports have been received, however, NNPD Criminal Investigator, Dale West confirmed that this was a death being investigated by NNPD that his report existed, but the case was still open.

Thus, Claimant's bases for recovery are necessarily limited; however, based upon information derived from the autopsy report and the circumstances known to claimant, claimant's decedent died as a result of the negligent failure of the NNPD to recognize the decedent's intoxication as a medical emergency and secure prompt medical intervention. Likewise, claimant believes that NNPD lacked or failed to follow policies which would have identified acute drug intoxication as a medical emergency requiring prompt medical attention, or at a minimum, monitoring.

As a result of the wrongful death of Louie Taylor, claimant has lost the value of his love, assistance, companionship, support, affection and all consortium claims recognizable by the law of the State of New Mexico. In addition, the Estate has lost the value of life, hedonic damages, and all other bases of damages for wrongful death cognizable under New Mexico law.

This form (Form 95) is formal notice of a claim, as required by federal law. It is not a pleading and is intended to be interpreted liberally in view of the fact that claimant has limited information about the claim and that much of the necessary information is in the hands of the NNPD. There may be other, unspecified, negligent acts or omissions, which have not been precisely identified at this time, but which are part of the sequence of events from which the claim arises. Some acts or omissions may pre-date the date stated on this form and some may have come afterward, but they are interrelated. All negligent acts and omissions related to the stated claim are hereby included in the tort notice, including, if appropriate, failure to transfer in a safe, reasonable, and timely manner, failure to communicate, failure to assess, failure to monitor, negligent hiring, training, supervision, and retention. Litigation and discovery may add clarity and precision to the claim. It is felt that the notice provided and the information given is sufficient under law to allow the government to conduct its own investigation of the circumstances of the claim.

STATE OF NEW MEXICO
COUNTY OF SAN JUAN
ELEVENTH JUDICIAL DISTRICT COURT

FILED
11th JUDICIAL DISTRICT COURT
San Juan County
12/2/2020 10:56 AM
WELDON J. NEFF
CLERK OF THE COURT
Frances Slavey

IN THE MATTER OF THE APPOINTMENT
OF A PERSONAL REPRESENTATIVE FOR
THE WRONGFUL DEATH OF
LOUIE TAYLOR, Deceased.

No. D-1116-CV-2020-01381

## ORDER APPOINTING PERSONAL REPRESENTATIVE
## FOR THE PROSECUTION OF WRONGFUL DEATH LITIGATION

THIS MATTER comes before the Court on the petition of Minnie Taylor, for appointment as Personal Representative of Louie Taylor, deceased, for the purpose of pursuing a wrongful death claim, and the court having considered the petition, finds as follows:

1.  The petition for appointment of Personal Representative is complete.

2.  The application has made oath or affirmation that the statements contained in the application are true to the best of applicant's knowledge and belief.

3.  On the basis of the statements in the petition, this court has jurisdiction over this matter.

4.  On the basis of the statements in the petition, venue is proper because decedent died due to alleged negligence that occurred in San Juan County, New Mexico.

5.  Petitioner has made oath or affirmation that, after the exercise of reasonable diligence, it is determined that she is the surviving mother and the decedent was unmarried, and had no children, either biological or adopted. She has also identified decedent's immediate family members, including herself.

1

6.      Petitioner states that she has been advised as to the requirements of the Personal Representative under New Mexico law and as to her obligations and fiduciary responsibilities to other claimants and beneficiaries of a wrongful death claim.

7.      Petitioner has made oath or affirmation that she recognizes her duties under the wrongful death laws of New Mexico and agrees to comply with them as applicable and to serve as statutory trustee.

8.      To the best of petitioner's knowledge, no other person has been appointment as a Personal Representative for the purpose of pursuing a wrongful death claim on behalf of the estate of Louie Taylor.

9.      It appears from the petition that this proceeding was commenced as prescribed by the laws of New Mexico.

**NOW, THEREFORE, IT IS ORDERED as follows:**

A.      The petition is hereby granted.

B.      Petitioner, Minnie Taylor, is hereby appointed as the Personal Representative of Louie Taylor, deceased, for the purpose of pursuing a wrongful death claim.

C.      Petitioner shall distribute any sums recovered from the wrongful death claim in accordance with applicable law after the payment of funeral expenses, attorney fees, and related expenses, as ordered by this court, or any other court of competent jurisdiction, it being anticipated that the proceedings will be bought in San Juan County, New Mexico.

D.      Petitioner is expressly authorized to request and receive medical records of the decedent in order to information in furtherance of the anticipated wrongful death action.



Curtis R. Gurley
District Judge

2

Respectfully submitted by:


_/s/ Forrest G. Buffington_____
Forrest G. Buffington, Esq.
Attorney for Petitioner,
Minnie Taylor
P.O. Box 1821
Shiprock, NM  87420
(505) 905-5000

3



**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information, visit our website at *www.usps.com®*.

Washington, DC 20240

| Certified Mail Fee | $3.55 | |
| --- | --- | --- |
| $ | $2.85 | 0118 |
| Extra Services & Fees (check box, add fee as appropriate) | | 06 |
| ☐ Return Receipt (hardcopy) | $ $0.00 | |
| ☐ Return Receipt (electronic) | $ $0.00 | Postmark |
| ☐ Certified Mail Restricted Delivery | $ $0.00 | Here |
| ☐ Adult Signature Required | $ $0.00 | |
| ☐ Adult Signature Restricted Delivery $ | | |
| Postage | $0.70 | |
| $ | | |
| Total Postage and Fees | $7.10 | |
| $ | | |

TAYLOR, M.

Dept of the Interior
1849 C Street NW
Washington, DC 20240

PS Form 3800, April 2015 PSN 7530-02-000-9047    See Reverse for Instructions

---



**SENDER: COMPLETE THIS SECTION**

■ Complete items 1, 2, and 3.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Dept of the Interior
1849 C Street NW
Washington, DC 20240

9590 9402 2564 6306 8058 01

2. Article Number (Transfer from service label)
7019 0140 0000 6865 1880

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____  ☒ Agent
☐ Addressee

B. Received by (Printed Name)   C. Date of Delivery
A. Sessions   12/18/20

D. Is delivery address different from item 1?  ☒ Yes
If YES, enter delivery address below:  ☐ No

DOI-BIA-OJS
1849 C St. NW
Mailstop 3655 3657-MIB
Washington, DC 20240.

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☒ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2015 PSN 7530-02-000-9053    Domestic Return Receipt