UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

MINNIE TAYLOR, *Individually
and as Personal Representative of
the Estate of Louie Taylor*, and
HAROLD CUTHAIR,

    Plaintiffs,

v.  Civ. No. 21-613 GJF/JFR

THE UNITED STATES OF AMERICA,

    Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court upon the United States of America's, "Partial Motion to Dismiss and Memorandum in Support" [ECF 9] ("Motion"). The Motion seeks dismissal of Count II of Plaintiffs' Complaint [ECF 1 ¶¶ 47–52] pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). The Motion is fully briefed. ECFs 11 (Response) & 12 (Reply). For the following reasons, the Court **GRANTS** the Motion.

### I. BACKGROUND

The Complaint sets forth the following facts, which the Court accepts as true for the purposes of its Rule 12(b)(6) analysis. *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (observing that, in contrast to factual assertions, courts need not accept legal conclusions as true). On February 29, 2020, Plaintiffs' decedent, Louie Taylor, ingested methamphetamine, became agitated, and then left the home of his mother, Plaintiff Minnie Taylor. ECF 1 ¶¶ 20–21. Later that day, the Shiprock Police Department ("SPD") notified Minnie that Louie had presented to the Northern Navajo Medical Center ("NNMC") to seek medical care for drug ingestion and that the SPD had arrested him there.

*Id.* Minnie Taylor advised SPD personnel three separate times that her son had likely ingested drugs and requested that he be examined and, if necessary, treated for "probable drug ingestion intoxication." *Id.* ¶¶ 24–26. Later that day, Minnie provided an SPD officer with a bag of what she believed to be drugs that she found in her son's bedroom and requested that the bag's contents be examined by NNMC personnel. *Id.* ¶ 28.

NNMC was a facility capable of providing Decedent with medical care and was within "two minutes" from the Shiprock Police Detention Facility ("SPDF"). *Id.* ¶ 29. Nonetheless, some time on either February 29 or March 1, 2020, the SPD transported Louie from NNMC to the SPDF. *Id.* ¶¶ 27, 30. On March 1, 2020, Minnie Taylor learned that her son had died in custody at the SPDF. *Id.* ¶ 30.

Because of these events, Plaintiffs Minnie Taylor and Harold Cuthair (Louie Taylor's father) allege that the Navajo Nation negligently failed to "allow [Louie Taylor] access to medical care, negligently interfered with [his] attempts to secure medical care, negligently failed to screen [him] prior to his admission to jail, negligently failed to monitor [him] upon admission to the jail, and negligent[ly] failed to transport [him] for medical assessment and treatment." *Id.* ¶ 32.

Pursuant to a Public Law 93-648 contract ("the Contract"),[1] the Navajo Nation[2] provides adult detention services on its Reservation. *Id.* ¶ 4. The Contract requires the Navajo Nation to provide "adequate medical care to" all inmates, including Louie Taylor. *Id.* ¶ 34. In addition, Plaintiffs allege that a consent decree entered by the Navajo Nation District Court in *Silver v. Pahe*, Cause No. WR-CV-235-92 (Navajo Dist. Ct. Nov. 17, 1991) ("Consent Decree"), mandates

---

[1] Plaintiffs attached a copy of the Contract to their Response. *See* ECF 11 at 12–20. The Court's reference to such material outside the Complaint does not convert the Motion into one brought under Rule 56. *Clark v. United States*, 695 F. App'x 378, 382 n. 2 (10th Cir. 2017) (unpublished).

[2] The Court refers to the various entities associated with the Navajo Nation mentioned in the Complaint—none of which are a party to the instant action—collectively as the "Navajo Nation."

standards of medical care for Navajo Nation detention facilities. *Id.* ¶ 35.[3] Plaintiffs further allege that these authorities require the Navajo Nation "to screen incoming inmates for medical needs, and refuse acceptance of such prisoners … in need of medical care, and to routinely monitor and check up on inmates who were at risk due to medical conditions, including the ingestion of intoxicating substances." *Id.* ¶¶ 35–36.

Plaintiffs' "Complaint for Wrongful Death and Loss of Consortium" brings four claims against the United States: negligence (Count I); negligent training, administration, and supervision (Count II); loss of chance (Count III); and loss of consortium (Count IV). ECF 1. In lieu of an answer, the United States filed the instant Motion, seeking dismissal of Count II for lack of subject matter jurisdiction and failure to state a claim on which relief could be granted, under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). ECF 9 at 1.

## II. ISSUES

The Court must determine whether the Complaint alleges facts that, if true, plausibly suggest that the United States has waived sovereign immunity with respect to Count II—i.e., Plaintiffs' negligent training, administration, and supervision claim. *Hardscrabble Ranch, L.L.C. v. United States*, 840 F.3d 1216, 1220 (10th Cir. 2016) (observing that, to survive a motion for summary judgment, it is plaintiff's burden to assert factual allegations that plausibly suggest that the government has waived sovereign immunity with respect to her claims); *see also Berkovitz v. United States*, 486 U.S. 531, 547–48 (1998) (holding that, on a motion to dismiss, plaintiffs were not required to "prove[] their factual allegations"—so long as sovereign immunity would be waived if the complaint's "allegations [were] correct"—and giving plaintiffs the opportunity to "show on the basis of materials obtained in discovery or otherwise" that such allegations were

---

[3] Plaintiffs also attached a copy of the Consent Decree to their Response. ECF 11 at 21–26.

indeed correct). Count II alleges that the Navajo Nation[4] failed to: (1) adequately train its law enforcement employees on the dangers of "acute drug use;" (2) adequately supervise its employees to avoid drug overdose deaths; and (3) develop, adopt, and enforce adequate policies on drug use and overdose. ECF 1 ¶¶ 47–51.

Under the Federal Tort Claims Act ("FTCA"), the United States has waived sovereign immunity for certain torts, unless (as relevant here) the tort at issue implicates a "discretionary function." 28 U.S.C. §§ 1346(b)(1), 2674, 2680(a). Government action falls within the discretionary function exception if the action was (1) "a matter of choice for the acting employee" and (2) "based on considerations of public policy." *Berkovitz*, 486 U.S. at 536–37. In other words, "the discretionary function exception insulates the Government from liability if the action challenged in the case involves the permissible exercise of policy judgment." *Id.* at 537.

Thus, the Court must first assess whether Plaintiffs have alleged facts that, if true, plausibly suggest that Navajo Nation officials did not have "an element of judgment or choice" in adopting, implementing, and enforcing policies or training on inmate drug use. *Id.* at 537. If Plaintiffs have not alleged such facts, the Court must then assess whether Plaintiffs have alleged facts plausibly suggesting that the officials' actions were not "based on considerations of public policy." *Id.*

### III. PARTIES' ARGUMENTS

Invoking the *Berkovitz* framework, the United States argues that Plaintiffs have failed to meet their burden at step one because they have identified no mandatory statute, regulation, or policy that Navajo Nation personnel violated with respect to training, administration, or

---

[4] For the purpose of this Motion, the United States does not dispute, that it may be held liable under the FTCA (absent the applicability of sovereign immunity) for the actions of Navajo Nation corrections personnel. ECF 9 at 5 n.4 (citing *Platero v. United States*, No. CV 05-398 LH/RHS, 2006 WL 8443366, at *3 (D.N.M. Nov. 21, 2006) (noting that "[b]ecause the Navajo Department of Law Enforcement was funded in 2003 under a Public Law 93-638 contract, its officers [are] federal employees for purposes of the FTCA, and their actions [can] subject the United States to liability under certain circumstances." (citing 26 U.S.C. § 450f(d))).

supervision. ECF 9 at 5. Indeed, the United States emphasizes that the gravamen of Plaintiffs' complaint is that *there were no* such policies. *Id.* at 6. Moving to step two, the United States contends that the Court must presume that the challenged actions were grounded in policy because Plaintiffs have identified *no* mandatory rules that Navajo National personnel violated regarding training, administration, or supervision. *Id.* at 7 (citing *Ball v. United States*, 967 F.3d 1072, 1079 (10th Cir. 2020)). The United States relies on judicial opinions from this district that have found that decisions relating to training, administration, and supervision of law enforcement personnel implicate "important policy considerations." *Id.* at 7 (citing *Gonzagowski v. United States*, 495 F. Supp. 3d 1048, 1134 (D.N.M. 2020); *Garcia v. United States*, 709 F. Supp. 2d 1133, 1151 (D.N.M. 2010); *Begay v. United States*, No. CIV 15-0358 JB/SCY, 2016 WL 6394925, at *30 (D.N.M. Sept. 30, 2016)).

For their part, Plaintiffs insist that the Contract dictates "non-discretionary requirements and standards of its contractor, the Navajo Nation, in the operation of a jail." ECF 11 at 8–9. In addition, Plaintiffs contend that the Consent Decree sets forth "very specific standards." *Id.* at 9. Plaintiffs stress that they "have very clearly stated the duties breached, and the sources of those duties, with more clarity and specificity than necessary." ECF 8 at 11.

In reply, the United States acknowledges that while the Contract requires the Navajo Nation to provide "training" to corrections personnel, the Contract does not prescribe what that training must entail or that corrections personnel must be trained on detecting and responding to inmate drug use. ECF 12 at 2 (citing ECF 11 at 16). Similarly, the United States points out that although the Consent Decree requires the Navajo Nation to generally provide training to its employees, the Consent Decree does not specifically mention inmate drug use or overdose. *Id.* Thus, the United States asserts that "Plaintiffs cannot show that these documents prescribe specific

conduct relating to detainees who have ingested or overdosed on drugs." *Id.* at 12. Finally, the United States emphasizes that Plaintiffs have not challenged its position under step two of *Berkovitz*—i.e., that decisions related to the implementation, adoption, and enforcement of inmate drug use policies and training implicate important policy considerations. *Id.* at 5.

## IV. RELEVANT LAW

As an initial matter, the Court will address two procedural issues raised in the briefing. First, although the United States brought its Motion under both Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), it has asserted that the instant jurisdictional dispute is more appropriately considered under Rule 12(b)(6). ECF 9 at 1–2, 5 (citing *Franklin Sav. Corp. v. United States*, 180 F.3d 1124, 1130 (10th Cir. 1999)). And Plaintiffs agree. ECF 11 at 6. Consequently, the Court will analyze the Motion under Rule 12(b)(6). *Franklin Sav. Corp.*, 180 F.3d at 1129 ("As the [district] court recognized, it must convert a Rule 12(b)(1) motion to one under Rule 12(b)(6) … [i]f the jurisdictional question is intertwined with the merits of the case … Whether the discretionary-function exception applies is such a question." (internal quotation marks omitted) (quoting *Bell v. United States*, 127 F.3d 1226, 1228 (10th Cir. 1997))).

Second, both parties intimate that the Court has the authority to convert the Motion, if necessary, into one brought under Rule 56. ECFs 9 at 5 n.4 & ECF 11 at 6–7. But as neither party expressly requests the Court to do so and because neither party asserts that there are "specific disputes of material fact involving merit issues that require resolution under the summary-judgment standard of review," the Court declines to convert the instant Motion into one for summary judgment. *See Clark v. United States*, 695 F. App'x 378, 382 n.2 (10th Cir. 2017) (unpublished) ("[N]either party argues that this case should have been resolved under a summary-judgment analysis … Nor does either party point to specific disputes of material fact involving

merit issues that require resolution under a summary-judgment analysis. Accordingly, we need not consider whether the motion to dismiss should have been converted to a motion for summary judgment.").

### A. Federal Rule of Civil Procedure 12(b)(6)

"In an ordinary civil action, the Federal Rules of Civil Procedure require only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 319 (2007) (quoting Fed. R. Civ. P. 8(a)(2)). Put otherwise, "the complaint must say enough to give the defendant 'fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" *Id.* (quoting *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 346 (2005)). Failure to provide sufficient notice may result in dismissal of a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

"To survive a Rule 12(b)(6) motion," *Strain v. Regalado*, 977 F.3d 984, 989 (10th Cir. 2020), a claim for relief must "contain enough allegations of fact, taken as true, to state a claim to relief that is plausible on its face." *Alpenglow Botanicals, LLC v. United States*, 894 F.3d 1187, 1195 (10th Cir. 2018) (quoting *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012)). But "'legal conclusions' as well as '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements,'" are not "entitled to the assumption of truth." *Alpenglow,* 894 F.3d at 1195 (quoting *Iqbal*, 556 U.S. at 678–79). And the Court will only "consider facts alleged in the complaint itself" when evaluating its sufficiency. *Smallen v. W. Union Co.*, 950 F.3d 1297, 1305 (10th Cir. 2020) (citing *Emp.s' Ret. Sys. of Rhode Island v. Williams Companies, Inc.*, 889 F.3d 1153, 1158 (10th Cir. 2018)). In short, the Court must "'assume the veracity' of the well-pleaded factual allegations 'and then determine whether they

plausibly give rise to an entitlement to relief.'" *Alpenglow,* 894 F.3d at 1195 (quoting *Iqbal*, 556 U.S. at 679).

### B. Federal Tort Claims Act

"Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994) (citing *Loeffler v. Frank*, 486 U.S. 549, 554 (1988); *Fed. Hous. Admin. v. Burr*, 309 U.S. 242 (1940)). The FTCA, however, "provides a limited waiver of sovereign immunity." *Ball v. United States*, 967 F.3d 1072, 1075 (10th Cir. 2020). Under the FTCA, the United States may be held liable for "injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1).

Excluded from the reach of the FTCA, however, are claims "based upon the exercise or performance or the failure to exercise or perform a *discretionary function* or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a) (emphasis added). In other words, the Government has not waived sovereign immunity with respect to "claims based on the performance of a discretionary function or duty on the part of a federal agency or an employee of the Government." *Clark v. United States*, 695 F. App'x 378, 382 (10th Cir. 2007) (unpublished) (quoting *Garcia v. United States Air Force*, 533 F.3d 1170, 1175 (10th Cir. 2008)). The Supreme Court has observed that the discretionary function exception "marks the boundary between Congress' willingness to impose tort liability upon the United States and its desire to protect certain governmental activities from exposure to suit by private individuals." *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig*

*Airlines)*, 467 U.S. 797, 808 (1984). "The exception applies even if the governmental employees were negligent." *Aragon v. United States*, 146 F.3d 819, 822–23 (10th Cir. 1998) (citing *Allen v. United States*, 816 F.2d 1417, 1421 (10th Cir. 1987)).

The discretionary function exception is strictly construed in the Government's favor. *United States Dep't of Energy v. Ohio*, 503 U.S. 607, 615 (1992). "Because the discretionary function exception is jurisdictional," Plaintiffs bear the burden of persuasion that it does not apply. *Hardscrabble Ranch, L.L.C. v. United States*, 840 F.3d 1216, 1220 (10th Cir. 2016) (citing *Elder v. United States*, 312 F.3d 1172, 1176 (10th Cir. 2002); 28 U.S.C. § 1346(b)(1)).

In *Berkovitz v. United States*, 486 U.S. 531, 536–37 (1988), the Supreme Court set forth a two-step test for determining whether government action is protected by the discretionary function exception. First, Plaintiffs must allege that the actions or omissions at issue were not a matter of agency or employee choice. *Id.* at 536. "For example, if a regulation or policy '*specifically prescribes* a course of action for an employee to follow,' there would be no discretion for the employee: he would have no choice but to follow the directive, so the discretionary function exception would not apply." *Hardscrabble Ranch, L.L.C.*, 840 F.3d at 1220 (quoting *Berkovitz*, 486 U.S. at 536) (emphasis added). Second, even if the conduct in the first step *was* a matter of choice, Plaintiffs may still insulate a claim from the discretionary function exception by showing that the challenged government action is not the kind of action the exception was designed to shield. *Id.* The discretionary function exception is intended to "prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort.'" *Kiehn v. United States*, 984 F.2d 1100, 1103 (10th Cir. 1993) (quoting *Berkovitz*, 486 U.S. at 536). In other words, the discretionary function exception *only* immunizes the Government from liability if the action *both* (1) involves an exercise of

9

judgment and (2) was made based on considerations of public policy. *Id.*

Under precedent of the Tenth Circuit and this District, dismissals for lack of jurisdiction "for a failure to establish a waiver of sovereign immunity under the FTCA," should be without prejudice. *Warren v. United States*, 244 F. Supp. 3d 1173, 1218 (D.N.M. 2017) (citing *Mecca v. United States*, 389 F. App'x 775, 780 (10th Cir. 2010) (unpublished)).

## V. DISCUSSION

Applying the *Berkovitz* two-step test, the Court holds that Plaintiffs have not stated a claim in Count II on which relief can be granted. At step one, the Court concludes that Plaintiffs have failed to plead facts that, if true, plausibly suggest that the Navajo Nation did not have discretion in how it adopted, implemented, and enforced policies and training related to inmate drug use and drug overdose. At step two, the Court holds that such decisions are the type of decisions the discretionary function was designed to protect because they implicate important policy considerations.

### A. Because Neither Contract nor Consent Decree Prescribes Specific Course of Action Relating to Adoption, Implementation, and Enforcement of Inmate Drug Use Policies and Trainings, Plaintiffs Have Not Met Their Burden Under Step One of *Berkovitz*

At step one, the *Berkovitz* analysis turns on whether the challenged government action was "a matter of choice." *Hardcrabble Ranch, L.L.C.*, 840 F.3d at 1220 (quoting *Berkovitz*, 486 U.S. at 536–37). An action is not a matter of choice if there exists mandatory authority, such as a regulation or policy, that "*specifically prescribes* a course of action." *Id.* (quoting *Berkovitz*, 486 U.S. at 536–37) (emphasis added). Neither the Contract nor the Consent Decree specifically prescribes (1) how the Navajo Nation must train its corrections employees on inmate drug use; (2) how the Navajo Nation must supervise its employees to avoid drug overdose deaths; or (3) what policies the Navajo Nation must develop, adopt, and enforce with regard to inmate drug use.

Nonetheless, Plaintiffs contend that four provisions in the Contract combine to provide the type of mandatory language necessary to remove Count II from the purview of the discretionary function exception, ECF 11 at 3:

> (1) "When the Contractor [(the Navajo Nation)] is provided adequate funding … the Contractor shall provide all qualified, certified, and licensed personnel, equipment, supplies, training, and materials to operate corrections services in Navajo Indian Country." *Id.* at 16.
>
> (2) "Preliminary Health Care Screening … Corrections Staff trained by IHS [(Indian Health Service)] Community Health Nurses, shall perform medical screening of all detainees prior to the Corrections personnel accepting the detainees into the facility and shall record findings on a printed screening form approved by the Indian Health Service in order to ensure that no sick or injured person is booked or held in corrections facility unless a medical release has been obtained from a medical officer and to ensure that any detainee requiring medical attention is treated as soon as possible." *Id.* at 17.
>
> (3) "Twenty-Four Hour Emergency Care. Corrections Lieutenant and the Indian Health Service shall develop a written plan for the provision of twenty-four (24) hour emergency medical, dental, and mental health care. The Corrections Lieutenant and the Indian Health Service shall update the plan as needed and review it annually." *Id.* at 18.
>
> (4) "Cell Checks. Corrections Officers shall directly observe detainees at least every thirty minutes on an irregular schedule. Corrections Officers shall directly observe detainees who are mentally disordered or who demonstrate unusual or bizarre behavior every fifteen minutes. Suicidal detainees shall be under continuous observations." *Id.* at 18–19.

Looking next to the Consent Decree, Plaintiffs identify five relevant provisions, that they assert require the Navajo Nation to act in a specific manner, *id.* at 4:

> (1) "If funds are not available to take the necessary steps to house people under humane conditions, the jail populations must be reduced so that whoever remains in jail is housed under humane conditions." *Id.* at 22.
>
> (2) "Respondents [(the Navajo Nation)] shall … require continued training of all staff regarding [the Consent Decree]." *Id.* at 23.
>
> (3) "Preliminary medical screenings of incoming prisoners must be conducted prior to their placement in the general prison population. If necessary, sick prisoners must

11

be separated from other prisoners." *Id.* at 24.

(4) "A uniform written policy regarding high risk prisoners providing for five minute inspection rounds must be adopted and implemented." *Id.* at 25.

(5) "Respondents [(the Navajo Nation)] shall post at each cell and/or common area, signs providing the following information: … At the Crownpoint, Shiprock and Window Rock Jails: … That the prisoner has the right to receive medical care in a timely manner, and the right to receive prescription and non-prescription medications." *Id.* at 26.

Contrary to Plaintiffs' suggested interpretations of the Contract and the Consent Decree, the Court concludes that neither dictates *which* inmate *drug use* policies and training the Navajo Nation needed to adopt and implement or *how* it was to enforce such policies and conduct such training. The Court holds that Plaintiffs have failed—both in their Complaint and in their subsequent briefing—to set forth facts that, if true, plausibly suggest that the Navajo Nation did not have discretion in developing, implementing, and adopting its inmate drug use and overdose prevention regime. *See Berkovitz*, 486 U.S. at 536; *see also Aragon v. United States*, 146 F.3d at 823 (observing that Tenth Circuit precedent "requires the prescribed course of conduct be specific and mandatory" (citing *Daigle v. Shell Oil Co.*, 972 F.2d 1527, 1540 (10th Cir. 1992))); *Steele v. United States*, Civil Action No. 09-cv-01557-CMA-CBS, 2010 WL 2501200, at *4 (D. Colo. June 15, 2010) ("These regulations do not direct a mandatory course of conduct. They do not specifically dictate how the staff must be used, how guards must be supervised, who should be trained, what techniques must be taught, or how much time needs to be spent training.").

For instance, the Contract only requires the Navajo Nation to train its corrections employees. *See* ECF 11 at 16 ("[T]he [Navajo Nation] shall provide all … training … to operate corrections services in Navajo Indian Country."). But the Contract does not specify how the Navajo Nation must train its employees, the subject matter on which it must train its employees, or that the Navajo Nation must specifically train its employees on how to respond to inmate drug

12

use. Likewise, while the Contract and the Consent Decree require the Navajo Nation to screen incoming inmates, neither document specifies *which* medical conditions must be screened for, *how* the screening must be conducted, or even that incoming inmates be screened for potential overdose. In short, neither the Contract nor the Consent Decree prescribes a *specific* course of action for the Navajo Nation to take in terms of adopting, implementing, and enforcing inmate drug use policies and training. Thus, even though Plaintiffs' Complaint incorporates these documents, the Complaint still lacks any factual allegation plausibly suggesting that the challenged actions in Count II were anything other than discretionary.

The Tenth Circuit's decision in *Aragon v. United States*, 146 F.3d 819 (10th Cir. 1998), reinforces this Court's holding on this point. In *Aragon*, the plaintiffs owned land that allegedly had been polluted by the Air Force's use of a particular airplane cleaning chemical. The landowners brought claims under the FTCA for the harm caused by the alleged pollution. 146 F.3d at 822. The Air Force sought dismissal, arguing that the claims were barred under the discretionary function exception. *Id.* The plaintiffs responded that Air Force manuals, regulations, and New Mexico state law imposed "a mandatory, nondiscretionary duty on the Air [F]orce to consider the effects of waste water disposal on groundwater and to dispose of its waste water so as to avoid groundwater pollution." *Id.* The district court agreed with the Air Force, dismissed the complaint, and the Tenth Circuit affirmed. *Id.*

As relevant here, the Tenth Circuit analyzed whether Air Force Manual 85-14 prescribed a specific course of action for waste water disposal. *Id.* at 824. Manual 85-14 contained four relevant provisions: (1) "'the installations engineer, in accordance with [Air Force Regulation 91-9], will supervise the treatment and disposition of industrial wastes, which will be accomplished in a manner meeting anti-pollution requirements established by State control agencies;'" (2)

13

"'discharge of industrial waste must be stringently controlled;'" (3) "wastes produced in the 'cleaning of aircraft … pollute potable water;'" and (4) "'open carrier ditches and canals must not be used for the collection of industrial wastes involving fire or explosion hazards or odor nuisances.'" *Id.* (internal brackets omitted). The Tenth Circuit held that these provisions were neither "specific" nor "mandatory" because the provisions provided "Air Force personnel discretion" in how to dispose of the relevant cleaning agent. *Id.* The Tenth Circuit also observed that Air Force Regulation 91-9 merely required Air Force personnel to "cooperate with [New Mexico] civil authorities … to prevent water pollution and to comply with state water contamination standards." *Id.*

The Tenth Circuit's analysis in *Domme v. United States*, 61 F.3d 787 (10th Cir. 1995), is largely similar. In *Domme*, one of the plaintiffs was an electrician employed by Sandia National Laboratories at Kirtland Air Force Base, who was electrocuted on the job. 61 F.3d at 788. The plaintiffs sued under the FTCA, alleging that the Government was liable for the Department of Energy's ("DOE") negligent oversight over Sandia National Laboratories. *Id.* The plaintiffs argued that two DOE orders removed their case from the scope of the discretionary function exception. *Id.* at 790. The first order required the DOE to conduct reviews of facilities and operations, including technical safety appraisals. *Id.* The second order required DOE contractors that operate government-owned facilities to comply with "a number of specified Occupational Safety and Health Administration standards." *Id.* at 790–91. The Tenth Circuit held that those DOE orders did not prescribe a specific course of action because they did not "specify the precise *manner* in which DOE [must] conduct … safety appraisals." *Id.* at 791 (emphasis added).

Here, as in *Aragon* and *Domme*, although the authority cited by Plaintiffs requires the Navajo Nation to engage in certain conduct regarding inmate intake and medical care, that same

14

authority allows the Navajo Nation to determine the *manner* in which it does so. Take for example the Consent Decree provision requiring a "uniform written policy" regarding "five minute inspection rounds" for "high risk prisoners," ECF 11 at 26. That requirement necessarily involves an element of discretion because it permits the Navajo Nation to promulgate its own policy governing how its employees must determine whether such inspections are warranted and how such inspections must be conducted. And by the same logic, the Contract provision requiring the Navajo Nation to develop a written plan on the provision of twenty-four hour medical care does not prescribe a specific course of conduct.

Simply put, Plaintiffs' Complaint contains no allegations of fact that include an applicable mandatory requirement—i.e., one that sets forth a *specific* course of action for how the Navajo Nation is to adopt, implement, and enforce policies and training on responding to inmate drug use. Because Plaintiffs' Complaint lacks any factual allegations that plausibly suggest that the challenged actions in Count II were not discretionary, the Court moves to the second *Berkovitz* step to address whether those actions implicated policy considerations.

**B. Decisions Regarding Adoption, Implementation, and Enforcement of Policies and Trainings on Inmate Drug Use Implicate Policy Considerations**

At the second step of *Berkovitz*, the Court must determine whether the challenged conduct is the type of activity the discretionary function exception was designed to shield. *Ball v. United States*, 967 F.3d 1072, 1075 (10th Cir. 2020). The exception is intended to guard against judicial second-guessing of agency decision making "'grounded in social, economic, and political policy through the medium of an action in tort.'" *Id.* at 1076 (quoting *Berkovitz*, 486 U.S. at 536–37). Put differently, "if the conduct 'implicates the exercise of a policy judgment of a social, economic, or

15

political nature,' the discretionary-function exception shields the government from liability." *Id.* (quoting *Duke v. Dep't of Agric.*, 131 F.3d 1407, 1411 (10th Cir. 1997)).

As the Supreme Court has observed, "[w]hen established governmental policy, as expressed or implied by statute, regulation, or agency guidelines, allows a government agent to exercise discretion, it must be *presumed* that the agent's acts are grounded in policy when exercising that discretion." *United States v. Gaubert*, 499 U.S. 315, 323 (1991) (emphasis added). This inquiry focuses not on whether the government actually considered policy in making a decision but on whether "the nature of the actions taken" are "*susceptible*" to policy analysis. *Ball*, 967 F.3d at 1076 (quoting *Gaubert*, 499 U.S. at 325) (emphasis added). So, instead of "ask[ing] whether policy analysis is the actual reason for the decision in question," the Court must focus on whether the category of conduct at issue "*can* be based on policy concerns." *Sydnes v. United States*, 523 F.3d 1179, 1185 (10th Cir. 2008) (internal quotation marks omitted) (emphasis added).

Plaintiffs' Response is silent as to why the Court should consider decisions relating to the adoption, implementation, and enforcement of inmate drug use policies and training as not susceptible to policy considerations. ECF 11 at 8–9. Because the Court found at step one that such decisions were discretionary, it must *presume* that those types of decisions are susceptible to policy considerations. *Ball*, 967 F.3d at 1076. Here, even apart from Plaintiffs' silence on the topic, the Court sees no reason to nullify or disregard that presumption. Courts in this District have routinely held that law enforcement decisions generally involve policy considerations. *See, e.g.*, *Warren v. United States*, 244 F.Supp.3d 1173, 1233 (D.N.M. Mar. 22, 2017); *Garcia v. United States*, 709 F.Supp.2d 1133, 1151 (D.N.M. 2010). And courts here and elsewhere in the Tenth Circuit have likewise held that employee training decisions generally implicate policy considerations. *See, e.g.*, *Begay v. United States*, No. CIV 15-0358 JB/SCY, 2016 WL 639392, at *30 (D.N.M. Sept. 30,

2016); *Steele v. United States*, No. 09-CV-01557-CMA/CBS, 2010 WL 2501200, at *4 (D. Colo. June 15, 2010) (holding that decisions related to the supervision and training of penitentiary officers implicated policy considerations). The Court therefore holds that the facts pled by Plaintiffs in their Complaint, even taken as true, do not plausibly suggest that the Navajo Nation's actions, as described by Count II, were not susceptible to policy considerations.

## V. CONCLUSION

In sum, the Court holds that the discretionary function exception deprives it of subject matter jurisdiction over Count II of the Complaint. Differently said, the Court concludes that Count II does not state a claim on which relief can be granted.

**IT IS THEREFORE ORDERED** that the United States' Motion is **GRANTED** and Count II of the Complaint is **DISMISSED WITHOUT PREJUDICE**.

**SO ORDERED.**

_____
THE HONORABLE GREGORY J. FOURATT
UNITED STATES MAGISTRATE JUDGE
*Presiding by Consent*