IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

MINNIE TAYLOR, Individually and as
Personal Representative of the ESTATE OF
LOUIE TAYLOR, and HAROLD CUTHAIR,

        Plaintiffs,

        v.                                      No. 21-cv-00613-GJF-JFR

THE UNITED STATES OF AMERICA,

        Defendant.

## DEFENDANT UNITED STATES' PARTIAL MOTION FOR SUMMARY JUDGMENT ON CLAIMS BASED ON FAILURE TO OBTAIN A MEDICAL CLEARANCE EXAM

The Court should grant summary judgment on Plaintiffs' claims for negligence (Count I) and loss of chance (Count III) to the extent they are based on Defendant's failure to obtain a medical clearance exam[1] prior to arresting and detaining the decedent, Louie Taylor, which allegedly resulted in his in-custody death from an alleged methamphetamine overdose. *See* Doc. 1 ¶¶ 42-45, 54. Plaintiffs fail to show that their claims based on failure to obtain a medical clearance exam fall outside of the discretionary function exception to the Federal Tort Claims Act ("FTCA"). *See* 28 U.S.C. § 2680(a). First, Plaintiffs cannot point to any mandatory and specific federal statute, regulation, or policy requiring a medical clearance exam under the circumstances. Second, decisions relating to whether to obtain a medical clearance exam prior to arrest or detention implicate myriad policy concerns. Because the discretionary function exception applies, the United

---

[1] In this Motion, the term "medical clearance exam" will be used to denote a medical examination by a healthcare provider to determine whether a person can be arrested or detained without further treatment. The term "intake screening" will be used to denote the part of the corrections intake process when a corrections officer fills out forms relating to the detainee's health. Defendant recognizes that the policies cited in this Motion use inconsistent and confusing terminology, especially with respect to the term "medical screening," which is used synonymously with "medical clearance exam" and "intake screening" depending on the policy.

States has not waived its sovereign immunity as to claims based on failure to obtain a medical clearance exam, and the Court lacks subject matter jurisdiction to consider those claims.

The undersigned notified Plaintiffs' counsel of this motion, and Plaintiffs are opposed.

## DEFENDANT'S UNDISPUTED MATERIAL FACTS ("UMFs")

**A.     Mr. Taylor's Arrest and Detention**

1.     On the evening of February 29, 2020, Plaintiff Minnie Taylor called the police repeatedly to ask for their help to deal with her son, who was intoxicated. Def.'s Fourth Supplemental Responses to Pls.' First Set of Written Discovery, attached as Ex. A, at 1.

2.     Mr. Taylor fled the scene before Navajo Nation Police Sgt. Francis Yazzie responded to the Taylor residence. *Id.*

3.     Shortly thereafter, Officer Danielle Murdock responded to a call from the Northern Navajo Medical Center reporting a male subject banging on the doors and causing a disturbance. *Id.* at 2.

4.     Officer Murdock found Mr. Taylor sitting on a bench outside the emergency department and detained him, but she was not informed by hospital staff that Mr. Taylor was waiting to be triaged. *Id.* at 1-2.

5.     Officer Murdock brought him back to Sgt. Yazzie, who instructed her to place Mr. Taylor under arrest for disorderly conduct and to transport him to the Shiprock Jail. *Id.* at 2.

6.     Mr. Taylor was booked into the Shiprock Jail and did not request or receive medical attention. *Id.*

7.     The booking officer noted on an intake screening form that he appeared to be on drugs and claimed to be seeing aliens. Officer Murdock also noted on another form that Mr. Taylor appeared to be under the influence of alcohol or drugs and was exhibiting bizarre behavior. *Id.*

8. During the evening, the corrections officers who periodically checked on Mr. Taylor reported that he was pacing, yelling, and banging on the door. *Id*. at 3.

9. Just after midnight on March 1, 2020, a corrections officer found Mr. Taylor sitting on the floor of his cell unresponsive. *Id*.

10. EMS arrived at the jail and transported Mr. Taylor to Northern Navajo Medical Center, where he was pronounced dead. *Id*.

11. Plaintiffs raise claims of negligence and loss of chance based on the police and corrections officers' failure to obtain a medical clearance exam for Mr. Taylor prior to arresting and booking him. Doc. 1 ¶¶ 40-46, 53-54. They further assert a claim for loss of consortium. *Id*. ¶¶ 55-56.

12. Plaintiffs disclosed a medical expert, Dr. Virginia Harvey, who will testify that "on February 29, 2029, Mr. Taylor appeared to be suffering from moderate to severe methamphetamine toxicity." Dr. Harvey Expert Report, attached as Ex. B, at 2; *see also* Dr. Harvey Dep., attached as Ex. C, at 151:12-20.

13. Dr. Harvey reviewed Officer Murdock's bodyworn camera footage of Mr. Taylor's arrest and booking into the Shiprock Jail, and this footage did not change any of her opinions. *Id*. at 11:20-12:8.

**B.    Applicable Policies**

14. The Navajo Nation contracted to provide police and corrections services in Shiprock, NM pursuant to contracts with the Bureau of Indian Affairs ("BIA") under Public Law 93-638 ("638 Contracts"). Doc. 1 ¶¶ 1, 4; Decl. of Brenda Gonzales, attached as Ex. D, ¶ 3.

15. BIA Office of Justice Services ("OJS") policies applied to the Navajo Nation's police and corrections officers pursuant to the 638 Contracts, including the BIA OJS Law Enforcement Handbook and the BIA OJS Corrections Handbook. *See* Ex. D ¶ 5.

16. A consent decree entered by the Navajo Nation District Court in *Silver v. Pahe*, Cause No. WR-CV-235-92 (Navajo Dist. Ct. Nov. 17, 1991) ("Consent Decree"), applies to the Navajo Nation Department of Corrections, including detention facilities such as the Shiprock Jail. *Id.* ¶ 8; *see also* Doc. 1 ¶ 35.

17. The BIA OJS Law Enforcement Handbook provides:

M. Sick, injured, or extremely intoxicated prisoners shall be provided medical treatment as soon as possible. The officer will contact a supervisor immediately and advise him/her of the arrestee's condition. If the supervisor determines the arrestee needs medical screening before booking, the officer will transport the arrestee to an approved health care facility. Once the arrestee's medical condition has been addressed and properly treated by medical person[nel], the officer shall transport the arrestee to the detention facility for booking.

N. Questions regarding the health status of a prisoner presented to a detention facility during the booking process may require consultation by the law enforcement supervisor, the detention facility supervisor, and health care providers for proper resolution.

BIA OJS Law Enforcement Handbook, attached as Ex. D2, at 2.

18. The BIA OJS Law Enforcement Handbook does not define what "extremely intoxicated" means. *See id.*

19. The Consent Decree provides as follows:

b. Preliminary medical screenings of incoming prisoners must be conducted prior to their placement in the general prison population. If necessary, sick prisoners must be separated from other prisoners.

Consent Decree, attached as Ex. E, at 2.

20. The "medical screening" described in the Consent Decree consists of intake screening forms filled out by detention officers upon the detainee's arrival at the detention facility. *See id*. at 3-4.

21. If the detainee is unable to assist the detention officer with filling out the intake screening forms due to intoxication, the detention officer is to attempt to fill in any missing information within 48 hours of detention. *See id*. at 4.

22. The Consent Decree does not specify whether intoxication at any level would require medical clearance before booking. *See id*. at 2.

23. The 638 Contract for corrections services provides as follows:

(h) Preliminary Health Care Screening (Not a Medical Clearance): Corrections staff trained by IHS Community Health Nurses, shall perform medical screening of all detainees prior to the Corrections personnel accepting the detainees into the facility and shall record findings on a printed screening form approved by the Indian Health Service in order to ensure that no sick or injured person is booked or held in corrections facility unless a medical release has been obtained from a medical officer and to ensure that any detainee requiring medical attention is treated as soon as possible.

638 Contract, attached as Ex. D1, at 6.

24. The 638 Contract does not specify whether intoxication at any level would require medical clearance before booking. *See id*.

25. The BIA OJS Corrections Handbook provides as follows:

C. The booking officer shall ensure that an Arrestee Custody Receipt (appendix A) and, if medically needed, an Arrestee Medical Clearance Form (appendix B) is completed and provided for each arrestee prior to booking.

　　1. If an arrestee meets any of the issues as noted in section 6 on the "Arrestee Medical Clearance Form", they will not be booked into the facility until they have been medically screened and cleared by a medical health care provider or appropriate certified health care provider.

5

2. It is not imperative that all arrestees be medically screened prior to being accepted-booked into the facility, if they do not meet one of the issues noted in section 6. However, detention staff should use sound judgment for any other issues that may preclude an arrestee from being booked.

3. The Admission/Booking Officer will not admit/book any arrestee into the facility who has been deemed extremely intoxicated, without medical clearance. This determination will be based on the admission/booking officer's observation, preliminary breath test, intoxilyzer test, etc.

4. In the event there is a disagreement between the detention officer performing the booking, and the arresting officer, whether the arrestee requires a medical screening, a Detention Supervisor will be contacted to make the final decision.

BIA OJS Corrections Handbook, attached as Ex. D3, at 2.

26. The Arrestee Medical Clearance Form (Appendix B, Section 6) lists the following conditions that would preclude booking without a medical clearance exam: "Unconscious"; "Injured"; "Bleeding"; "Fracture(s)"; "Assault"; "Pregnant"; "Involved in car accident"; "Sexual assault victim"; "Domestic Violence"; "Highly Intoxicated"; "Injured while being Arrested"; and "Involved in a suicide attempt." *Id*. at 3.

27. The BIA OJS Corrections Handbook does not define what "extremely intoxicated" or "highly intoxicated" means. *See id*. at 2-3.

28. Plaintiffs' corrections expert, Cameron Lindsay, testified that determining whether someone is extremely intoxicated versus mildly or moderately intoxicated requires an officer to "make an individual judgment." Dep. of Cameron Lindsay, attached as Ex. F, at 2.

## APPLICABLE LEGAL STANDARD

The federal government is immune from liability absent its consent, and the terms of that consent define a court's jurisdiction to entertain a suit against the government. *United States v. Mitchell*, 445 U.S. 535, 538 (1980). Absent a specific waiver, sovereign immunity bars the suit.

*F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994). The FTCA waives the United States' sovereign immunity for claims arising out of injuries caused by the negligent or wrongful act or omission of governmental employees acting within the scope of their employment. 28 U.S.C. § 1346(b)(1). The United States can be held liable "in the same manner and to the same extent as a private individual under like circumstances," subject to certain exceptions. *Id.* §§ 2674, 2680(a).

An exception to the FTCA preserves the United States' sovereign immunity for "[a]ny claim . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." *Id*. § 2680(a). The discretionary function exception "marks the boundary between Congress' willingness to impose tort liability upon the United States and its desire to protect certain governmental activities from exposure to suit by private individuals." *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 808 (1984).

To determine whether the challenged conduct falls within the discretionary function exception, courts engage in a two-pronged analysis, known as the *Berkovitz* test, determining: (1) "whether the challenged conduct 'involves an element of judgment or choice,'" rather than "'a federal statute, regulation, or policy that specifically prescribes a course of action for an employee to follow'"; and if so, (2) "'whether that judgment is the kind that the discretionary function exception was designed to shield,'" *i.e.*, a judgment with policy implications. *Kiehn v. United States*, 984 F.2d 1100, 1102-03 (10th Cir. 1993) (quoting *Berkovitz ex rel. Berkovitz v. United States*, 486 U.S. 531, 536 (1988) (alteration omitted)). "If the discretionary function exception applies to the challenged governmental conduct, the United States retains its sovereign immunity

and the district court lacks subject matter jurisdiction to hear the suit." *Domme v. United States*, 61 F.3d 787, 789 (10th Cir. 1995).

Plaintiffs bear the burden of showing that the FTCA's discretionary function exception does not apply. *See Hardscrabble Ranch, LLC v. United States*, 840 F.3d 1216, 1220 (10th Cir. 2016). "To avoid dismissal of an FTCA claim under the discretionary-function exception, a plaintiff must allege facts that place its claim facially outside the exception." *Franklin Sav. Corp. v. United States*, 180 F.3d 1124, 1130 (10th Cir. 1999). The Court may resolve a motion to dismiss based on the discretionary function exception under Rule 56 if there are "specific disputes of material fact involving merits issues that require resolution under the summary-judgment standard of review." *Clark v. United States*, 695 Fed. App'x 378, 382 n.2 (10th Cir. 2017). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). There is no issue for trial unless there is sufficient evidence to support a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

## ARGUMENT

I.  **No Mandatory Statute, Regulation, or Policy Required the Officers to Obtain a Medical Clearance Exam Before Arresting and Detaining Mr. Taylor.**

Because the discretionary function exception covers only those acts involving an element of judgment or choice, the Court must first determine if a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow. *Berkovitz*, 486 U.S. at 536. Plaintiffs bear the burden of "identify[ing] what mandatory statutes, regulations or directives have allegedly been violated with specificity." *Hammonds v. United States*, Civ. No. 16-1230

8

GBW/KRS, 2018 WL 1399183, at *5 (D.N.M. Mar. 19, 2018) (citing *Daigle v. Shell Oil Co.*, 972 F.2d 1527, 1539-1540 (10th Cir. 1992)).

Here, the relevant policies leave it to the discretion of the arresting and booking officers to decide whether a medical clearance exam is necessary for an inmate who may be exhibiting signs of intoxication. The BIA OJS Law Enforcement Handbook requires a medical clearance exam for "extremely intoxicated" arrestees but leaves it up to the supervisor's discretion to determine whether an arrestee requires medical clearance. UMFs 17-18. Similarly, the BIA OJS Corrections Handbook requires a medical clearance exam for "highly intoxicated" and "extremely intoxicated" detainees but leaves it up to the booking officer to determine whether the arrestee is sufficiently intoxicated to warrant medical clearance based on observation and any test results. UMFs 25-27. For conditions that are not explicitly listed as requiring a medical clearance exam, the BIA OJS Corrections Handbook instructs the booking officer to "use sound judgment" to determine whether to seek medical clearance. UMF 25. Neither the 638 Contract nor the Consent Decree[2] indicates that intoxication at any level would require a medical clearance exam before booking. UMFs 19-24. Accordingly, all of the relevant policies provide for the exercise of discretion in determining whether a person should receive a medical clearance exam before arrest or booking into jail.

Here, while it is undisputed that the police and corrections officers believed that Mr. Taylor was intoxicated, UMF 7, there is no evidence that any of them deemed him "extremely" or "heavily" intoxicated such that a medical clearance exam would have been required per the BIA OJS Law Enforcement Handbook or BIA OJS Corrections Handbook. Plaintiff's corrections expert, Cameron Lindsay, concedes that determining a person's level of intoxication requires the

---

[2] The United States does not concede that the Consent Decree is a Federal regulation, statute, or mandate for purposes of the FTCA, but even if the Court considers the Consent Decree, it does not set forth any mandatory, specific duties with respect to medical clearance exams.

exercise of "individual judgment." UMF 28. Although Plaintiffs may argue that the officers should have taken him for a medical clearance exam based on his apparent hallucinations, the discretionary function exception applies "whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). "Thus, the question of negligence is irrelevant." *Garcia v. U.S. Air Force*, 533 F.3d 1170, 1176 (10th Cir. 2008); *see also Aragon v. United States*, 146 F.3d 819, 822 (10th Cir. 1998) (noting that the "[discretionary function] exception applies even if the governmental employees were negligent"). In any event, even Plaintiff's medical expert, Dr. Harvey, acknowledges after having observed Mr. Taylor on video during the arrest and booking that he could have been only "moderately" intoxicated. UMFs 12-13.

When policies allow for officers to decide what medical interventions to seek for a detainee, courts have held that the policies are discretionary under the first prong of the *Berkovitz* test. For example, in *Cosby v. U.S. Marshals Service*, 520 F. App'x 819 (11th Cir. 2013), the U.S. Marshals Service ("USMS") had a directive that "[t]he USMS will ensure that all USMS prisoners receive medically necessary health care services." *Id*. at 821. Because the directive did not specifically prescribe a course of action for USMS employees to follow, the court concluded that "the decision about what specific type of care to provide is a discretionary matter that satisfies the first prong of the [discretionary function] exception." Similarly, in *Pena Arita v. United States*, 470 F. Supp. 3d 663 (S.D. Tex. 2020), a Customs and Border Protection policy required agents to "be alert to medical symptoms" and "expressions of suicidal thoughts" by detainees and to provide "appropriate medical care" for "[a]ny observed or reported injury or illness." *Id*. at 689. The court held that the language requiring "appropriate medical care" "fails to 'define a non-discretionary course of action" because "[w]hat constitutes 'appropriate medical care' necessarily relies on the discretion and policy judgments of the acting employees." *Id*. at 690. Finally, in *Baynes v. United*

10

*States*, No. 1:15-CV-1604-LMB-TCB, 2016 WL 4492807 (E.D. Va. Aug. 25, 2016), an FTCA plaintiff claimed injury from the failure of the Bureau of Prisons ("BOP") to arrange for a rape kit after he was assaulted in prison. *Id*. at *12. A regulation required BOP to "offer all victims of sexual abuse access to forensic medical examinations . . . where evidentiarily or medically appropriate." *Id*. (quoting 28 C.F.R. § 115.21)). The court held that "[t]his regulation explicitly provides discretion to BOP staff to ascertain when a rape kit or other forensic medical examination would be 'evidentiarily or medically appropriate.'" *Id*.

Plaintiffs are required to "point to regulatory language that mandates a course of action to avoid the first part of the discretionary-function exception." *Clark v. United States*, 695 F. App'x 378, 385 (10th Cir. 2017). However, the only language they can point to allows the officers to exercise their discretion to decide whether a potentially intoxicated detainee needs a medical clearance exam before arrest or booking. Therefore, Plaintiffs cannot satisfy their burden under the first step of *Berkovitz*.

## II. Decisions Relating to Whether a Medical Clearance Exam Is Needed Involve the Type of Policy Judgment Protected by the Discretionary Function Exception.

Under the second prong of *Berkovitz*, the Court "must determine whether the exercise of judgment or choice at issue is of the kind that the discretionary function exception was designed to shield." *Aragon v. United States*, 146 F.3d 819, 823 (10th Cir. 1998) (internal quotation marks omitted).

Courts have routinely held that decisions by corrections officers regarding whether to seek medical treatment for detainees implicate policy concerns. For example, in *Cosby*, the Eleventh Circuit explained that "in determining the precise course of medical treatment to pursue, several policy considerations are relevant, including prison security, the allocation of finite resources, and the logistics of prisoner transportation if transfer to an off-site facility is an option." 520 F. App'x

11

at 821; *see also Baynes*, 2016 WL 4492807, at *12 (relying on the policy considerations cited in *Cosby*). Likewise, in *Pena Arita*, the court concluded that the CBP agents who failed to provide medical aid to a detainee who later committed suicide "needed to balance his requests for medical aid against the medical severity, the resources available including security, the requests of other detainees, and the governmental policy and expertise in dealing with individuals in [his] specific situation." 470 F. Supp. 3d at 690 (footnote omitted).

Plaintiffs have failed to allege facts showing that the officers' actions were not "*susceptible* to policy analysis." *United States v. Gaubert*, 499 U.S. 315, 325 (1991) (emphasis added). Accordingly, Plaintiffs have not met their burden to show that their claims based on failure to obtain a medical clearance exam fall outside the discretionary function exception. Because the discretionary function exception applies, the United States has not waived its sovereign immunity, and the Court should grant summary judgment on these claims.

## **CONCLUSION**

For the foregoing reasons, the Court should conclude that the discretionary function exception deprives it of subject matter jurisdiction to consider Plaintiffs' claims to the extent they are based on failure to obtain a medical clearance exam for Mr. Taylor.

Respectfully submitted,

FRED J. FEDERICI
United States Attorney


*/s/ Christine H. Lyman 5/4/2022*
CHRISTINE H. LYMAN
Assistant United States Attorney
District of New Mexico
P.O. Box 607
Albuquerque, NM 87103
505-346-1532
Christine.Lyman@usdoj.gov

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 4, 2022, Defendant United States filed through the United States District Court CM/ECF System the foregoing document, causing it to be served by electronic means on all counsel of record.

*/s/ Christine H. Lyman 5/4/2022*
CHRISTINE H. LYMAN
Assistant United States Attorney